**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CR-14-0290-TUC-JAS (BGM) |
| Plaintiff, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| vs. | ) | |
| Amelia Peraza, | ) | |
| Vanessa Marie Gonzales, | ) | |
| Defendants. | ) | |

Currently pending before the Court is Defendant Amelia Peraza's Motion to Suppress for Lack of Probable Cause (Doc. 30) and Defendant Vanessa Marie Gonzales's Motion to Join Co-Defendant's Motion to Suppress (Doc. 47).[1] Defendants are charged with one count of knowingly and intentionally combining, conspiring, confederating and agreeing together with other persons known and unknown to the grand jury, to possess with intent to distribute 50 kilograms or more of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). Indictment (Doc. 9). Defendants are also charged with one count of knowingly and intentionally possessing with intent to distribute 50 kilograms or more of marijuana, a Schedule 1 controlled substance; in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Indictment (Doc. 9). Defendants seek suppression of evidence obtained as a result of a search allegedly in violation of the Fourth Amendment. The Government argues that it lawfully searched Defendant's vehicle based

_____

[1]Ms. Gonzales's name appears in the Court's docket with the spelling adopted in this Order. The Court notes, however, counsel have also used an alternate spelling (Gonzalez) in their pleadings.

upon probable cause.

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and a report and recommendation. On October 6, 2014, oral argument was heard by Magistrate Judge Macdonald and the matter taken under advisement. Minute Entry 10/6/2014 (Doc. 58). The Magistrate Judge recommends that the District Court, after its independent review, grant Defendant's motion.

I.    **FACTUAL BACKGROUND**

For purposes of these motions, the parties have stipulated to the facts as presented in their respective pleadings, supplemented by the testimony of United States Border Patrol Agent Ivan Chokan. Hr'g Tr. 10/6/2014 (Doc. 61) 12:4-13:11; 13:12-14:5; 20:15-22:20; 22:23-24:3.

Defendants Vanessa Marie Gonzales and Amelia Peraza have been in a relationship for approximately eight to nine years. Def. Gonzales's Mem. in Support of Mot. to Join Co-Def.'s Mot. to Suppress (Doc. 52) at 2. Prior to this incident, Defendants have cohabitated, and at the time of their arrest were both living with Defendant Gonzales's sister. *Id.* Defendants have each had their own vehicles in the past, and have shared use and access of those vehicles. *Id.*

On January 18, 2014, United States Border Patrol Agent Zane Chokan was on duty at the south checkpoint on State Route 85 ("SR 85"), outside of Ajo, Arizona. Hr'g Tr. 10/6/2014 (Doc. 61) 27:9-28:5; *see also* Def.'s Mot. to Suppress (Doc. 30) at 2; Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3. At approximately 10:10 a.m., Agent Chokan received a radio call from agents at the Lukeville, Arizona Port of Entry ("POE") who advised him that a suspicious vehicle had entered the United States from Mexico. Hr'g Tr. 10/6/2014 (Doc. 61) 28:6-13; *see also* Def.'s Mot. to Suppress (Doc. 30) at 2; Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3. The Lukeville POE agents described the vehicle as a red Ford Explorer with an Arizona license plate of BEN 9729. Govt.'s Resp. to Def.'s Mot. to Suppress for Lack

of Probable Cause (Doc. 32) at 3; Hr'g Tr. 10/6/2014 (Doc. 61) 28:11-21; *see also* Def.'s Mot. to Suppress (Doc. 30) at 2.  Agent Chokan testified that the POE agents indicated that the Explorer had two occupants and no luggage.  Hr'g Tr. 10/6/2014 (Doc. 61) 28:22-29:6; *see also* Def.'s Mot. to Suppress (Doc. 30) at 2; Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3.

Agent Chokan testified that the State Route 85 checkpoint where he was working at is located at approximately milepost 58 or 59.  Hr'g Tr. 10/6/2014 (Doc. 61) at 29:12-16. Agent Chokan further testified that the area between the checkpoint and Lukeville, specifically between mileposts 77 and 79, aside from being a major roadway for transportation, was an area of smuggling activity.  *Id.* at 29:20-30:14; 31:3-23; *see also* Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3.  Agent Chokan testified that individuals would pullover along State Route 85, particularly between mileposts 79 and 77, have their vehicles loaded with narcotics, and proceed north.  Hr'g Tr. 10/6/2014 (Doc. 61) 31:7-23; *see also* Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3.  The drivers then typically try to smuggle the illicit cargo through the Border Patrol checkpoint at SR 85.  Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3.  Agent Chokan further testified that at approximately 10:15 a.m., he was contacted by radio from the Ajo Border Patrol station and advised to watch for the red Ford Explorer on the basis of the POE report.  Hr'g Tr. 10/6/2014 (Doc. 61) at 30:15-25; *see also* Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3.

Agent Chokan testified that at approximately 10:40 a.m., the same morning, he saw a red Ford Explorer pull into the primary inspection lane at the checkpoint.  Hr'g Tr. 10/6/2014 (Doc. 61) 31:24-32:2, 33:2-4; *see also* Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3.  Defendant Peraza states that she approached the checkpoint at approximately 10:15 a.m.  Def.'s Mot. to Suppress (Doc. 30) at 2.  Agent Chokan further testified that the Ford Explorer had two occupants and that the license plate matched the POE report.  Hr'g Tr. 10/6/2014 (Doc. 61) 32:3-11; *see also* Def.'s Mot. to

1   Suppress (Doc. 30) at 2.  Agent Chokan identified Defendants as the vehicle occupants.  Hr'g

2   Tr. 10/6/2014 (Doc. 61) 33:22-34:9.  Agent Chokan testified that as he walked around the

3   Ford Explorer, he looked through the tinted windows and saw some clutter in the backseat,

4   and two large duffel bags in the cargo area.  *Id.* at 32:12-34:22; *see also* Def.'s Mot. to

5   Suppress (Doc. 30) at 2.

6        Agent Chokan testified that the area between the Lukeville POE and the SR 85 south

7   checkpoint is a national park, with the checkpoint located just beyond where the national

8   park land ends.  Hr'g Tr. 10/6/2014 (Doc. 61) 34:23-35:12.  Agent Chokan also testified that

9   one could see the national park's border clearly from the checkpoint.  *Id.*  Agent Chokan

10  testified that there is no place in the park that someone could buy luggage like the duffel bags

11  found in Defendants' vehicle.  *Id.* at 35:13-16; *see also* Govt.'s Resp. to Def.'s Mot. to

12  Suppress for Lack of Probable Cause (Doc. 32) at 3.  Agent Chokan further testified that

13  based on elapsed time from the 10:10 radio report to the 10:40 arrival of the Explorer, any

14  stop by the Explorer could not have lasted more than several minutes.  Hr'g Tr. 10/6/2014

15  (Doc.61) 36:3-15; *see also* Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable

16  Cause (Doc. 32) at 3.

17       Agent Chokan testified that he was familiar with several seizures at the checkpoint

18  involving luggage and cars coming through the Lukeville POE.  Hr'g Tr. 10/6/2014 (Doc.

19  61) 37:7-10.  Agent Chokan further testified that he recalled two recent narcotics seizures

20  involving duffel bags that were similar in size, shape, and color to those found in Defendants'

21  vehicle.  Hr'g Tr. 10/6/2014 (Doc. 61) 37:7-19; 38:14-23; 43:2-44:9; 54:3-15; 55:9-13; *see*

22  *also* Def.'s Mot. to Suppress (Doc. 30) at 2.  Agent Chokan also testified that after observing

23  the luggage in the back of Defendants' vehicle, he directed the Explorer to the secondary

24  inspection area, because he believed that the vehicle was loaded with narcotics.  Hr'g Tr.

25  10/6/2014 (Doc. 61) 37:20-38:3; *see also* Govt.'s Resp. to Def.'s Mot. to Suppress for Lack

26  of Probable Cause (Doc. 32) at 4.

27       Agent Chokan testified that after referring the Ford Explorer to secondary, he asked

28  Defendant Peraza to place the vehicle in park and turn the engine off.  Hr'g Tr. 10/6/2014

1   (Doc. 61) at 38:4-13;58:7-15; *see also* Def.'s Mot. to Suppress (Doc. 30) at 2-3.  Defendant

2   Peraza expressed her concern that if she turned the vehicle off, it would not start again.

3   Def.'s Mot. to Suppress (Doc. 30) at 3; *see also* Hr'g Tr. 10/6/2014 (Doc. 61) 38:4-13, 58:16-

4   18.  As such, Agent Chokan testified that he decided to proceed with the vehicle running.

5   Hr'g Tr. 10/6/2014 (Doc. 61) at 38:4-13; 58:19-22.  Agent Chokan further testified that while

6   the Ford Explorer was in the secondary inspection area, he went to the rear of the vehicle,

7   opened the lift gate and opened the luggage.  Hr'g Tr. 10/6/2014 (Doc. 61) 38:-4-13; 58:19-

8   22.  Agent Chokan testified that he did not ask any questions of either Defendant prior to

9   searching the vehicle.  Hr'g Tr. 10/6/2014 (Doc. 61) 58:23-25; *see also* Def.'s Mot. to

10   Suppress (Doc. 30) at 3.  Agent Chokan also testified that he tried to pull one of the duffel

11   bags toward him and found that it was very heavy.  Hr'g Tr. 10/6/2014 (Doc. 61) at 38:14-

12   16; 59:1-12.    Upon opening the bag, Agent Chokan testified that he discovered

13   approximately ninety-two (92) kilograms (approximately 204 pounds) of marijuana.  Hr'g

14   Tr. 10/6/2014 (Doc. 61) 39:2-7; *see also* Def.'s Mot. to Suppress (Doc. 30) at 3.

15          Upon discovery of the marijuana, both Defendants were placed under arrest and

16   advised of their rights.  Def.'s Mot. to Suppress (Doc. 30) at 3.  Following the advisement

17   and waiver, Defendant Peraza fully confessed, and Defendant Gonzales was interviewed

18   regarding her role in the incident.  Govt.'s Response to Def. Gonzales's Mem. in Support of

19   Mot. to Join Co-Def.'s Mot. to Suppress (Doc. 53) at 3-4.  Both Defendants were hired by

20   a friend, Adrian Sanchez, to smuggle marijuana from Mexico to Phoenix, Arizona.  *Id.*

21   Defendant Peraza was given money to register the Ford Explorer in her name.  *Id.*  Defendant

22   Gonzales drove the Ford Explorer to the Arizona Department of Motor Vehicles to have it

23   registered.  Hr'g Tr. 10/6/2014 (Doc. 61) 13:12-14:5.  Defendant Peraza was also given food

24   and gas money for the trip.  Govt.'s Response to Def. Gonzales's Mem. in Support of Mot.

25   to Join Co-Def.'s Mot. to Suppress (Doc. 53) at 4.  Defendants stayed in a hotel for two

26   nights in Mexico, then told to go to a gas station in Lukeville, Arizona for further

27   instructions.  *Id.*  Upon arriving in Lukeville, Arizona, the women were told to drive to

28   milepost 79 on State Route 85.  Govt.'s Response to Def. Gonzales's Mem. in Support of

1  Mot. to Join Co-Def.'s Mot. to Suppress (Doc. 53) at 4.  While Defendant Peraza was

2  driving, Defendant Gonzales spoke on the telephone to the man who had given them

3  instructions in Mexico.  *Id.*

4

5  **II.   ANALYSIS**

6      ***A.   Motion to Join***

7      Defendant Vanessa Marie Gonzales was the passenger of the car driven by Defendant

8  Amelia Peraza, and seeks to join Defendant Peraza's motion to suppress.  *See* Def.

9  Gonzales's Mot. to Join Co-Defendant's Mot. to Suppress (Doc. 47).  The Government

10  objects to her joinder in the motion.  *See* Govt.'s Response to Def. Gonzales's Mem. in

11  Support of Mot. to Join Co-Def.'s Mot. to Suppress (Doc. 53).

12              **1. The Stop**

13      Regarding standing, the Ninth Circuit Court of Appeals has stated:

14      To challenge their stop on Fourth Amendment grounds, Estrada-Nava [(the
        driver)] and Colin [(the passenger)] must have a reasonable expectation of
15      privacy in the Honda.  *United States v. Dorais*, 241 F.3d 1124, 1128 (9th Cir.
        2001).  We have held that occupants of a vehicle have standing to challenge
16      on Fourth Amendment grounds an officer's stop of their vehicle even if they
        have no possessory or ownership interest in the vehicle. [*United States v.*]
17      *Twilley*, 222 F.3d [1092,] 1095 (citations omitted).  We therefore conclude that
        Estrada-Nava and Colin have standing to challenge the stop.

18
19  *United States v. Colin*, 314 F.3d 439, 442-43 (9th Cir. 2002).  Furthermore, as a passenger,

20  Defendant Gonzales has "standing to contest the legality of [her] own detention."  *United*

21  *States v. Pulliam*, 405 F.3d 782, 787 (9th Cir. 2005) (citations omitted).  It is indisputable

22  "that during a traffic stop an officer seizes everyone in the vehicle, not just the driver."

23  *Brendlin v. California*, 551 U.S. 249, 255, 127 S.Ct. 2400, 2406, 168 L.Ed.2d 132 (2007).

24  As such, Defendant Gonzales has standing to challenge the stop, and additionally raise any

25  issues regarding the constitutionality of the seizure of her person.

26              **2. Search of the Vehicle**

27      A passenger does not, however, always have standing to challenge the search of the

28  vehicle.  "Fourth Amendment rights are personal rights which, like some other constitutional

rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)) (citations omitted).  Further, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134, 99 S.Ct. at 425 (citations omitted); *see also United States v. Pulliam*, 405 F.3d 782, 785-86 (9th Cir. 2005).  "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, *one against whom the search was directed*, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Rakas*, 439 U.S. at 134-35, 99 S.Ct. at 436 (emphasis in original) (citations omitted).  Because "the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, . . . it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id.* at 134, 99 S.Ct. at 425 (citations omitted); *see also Pulliam*, 405 F.3d at 789.

Generally, an ordinary vehicle passenger does not have any legitimate expectation of privacy in the vehicle in which they are traveling. *See Rakas*, 439 U.S. at 148-49, 99 S.Ct. at 433.  "A person may[, however,] have a legitimate expectation of privacy in a place or object he does not own." *United States v. Perez*, 689 F.2d 1336, 1338 (9th Cir. 1982).  For example, the Ninth Circuit Court of Appeals has held that a person with "permission to use his friend's automobile and the keys to the ignition and the trunk . . . possesses the requisite legitimate expectation of privacy necessary to challenge the propriety of the search." *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980).  The defendant seeking "[t]o establish standing to challenge the legality of a search or seizure . . . must demonstrate that they have a 'legitimate expectation of privacy' in the items seized or the area searched." *United States v. Sarkisian*, 197 F.3d 966, 986 (9th Cir. 1999) (citations omitted).

Here, although Defendant Gonzales did not have her name on the Ford Explorer's registration, she is in a long term relationship with Defendant Peraza, the have lived together

for several years, and on the date of the incident were traveling after having spent a couple of nights in a hotel in Mexico.  Def. Gonzales's Mem. in Support of Mot. to Join Co-Def.'s Mot. to Suppress (Doc. 52) at 2; Govt.'s Response to Def. Gonzales's Mem. in Support of Mot. to Join Co-Def.'s Mot. to Suppress (Doc. 53) at 3-4.  Although Gonzales was not driving the vehicle, she was more than just a mere passenger with permission to ride.   In light of her ongoing relationship with the vehicle's owner (Defendant Peraza), Defendant Gonzales had an objectively reasonable expectation of privacy in the vehicle based on their relationship and shared use of the vehicle.  *See United States v. Deysie*, 2014 WL 3887873 (D. Ariz. 2014) (holding passenger who was a in a long term, live-in relationship with the driver had standing to challenge vehicle search).  Accordingly, the Court grants Defendant Gonzales's Motion to Join Co-Defendant's Motion to Suppress (Doc. 47)*.*

### B.    Motion to Suppress

Defendant asserts that the agents exceeded the scope of their authority by searching Defendant's vehicle without probable cause.  Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 30) at 4, 7-8.  The Government argues that reasonable suspicion supported the stop and search.  Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 6.

### 1.  Referral to Secondary

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).  "[C]heckpoint stops are 'seizures' within the meaning of the Fourth Amendment."  *Martinez-Fuerte v. United States*, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976).  The Supreme Court of the United States has "upheld brief, suspicionless seizures of motorists at a fixed Border Patrol checkpoint designed to intercept illegal aliens, . . . and at a sobriety checkpoint aimed at removing drunk drivers from the road[.]"  *City of Indianapolis*

1    *v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 452, 148 L.Ed.2d 333 (2000) (internal citations

2    omitted).  Such programs were "designed to serve 'special needs, beyond the normal need

3    for law enforcement.'" *Id.* (citations omitted).  Moreover, "[i]t has been a national policy for

4    many years to limit immigration into the United States." *Martinez-Fuerte*, 428 U.S. at 551,

5    96 S.Ct. at 3080.  There is a substantial public interest "in the practice of routine stops for

6    inquiry at permanent checkpoints."  *Id.* at 556, 96 S.Ct. at 3082.

7         "While the need to make routine checkpoint stops is great, the consequent intrusion

8    on Fourth Amendment interests is quite limited."  *Id.* at 558, 96 S.Ct. at 3083.  The severity

9    of the interference with individual liberty "is 'gauged by the objective intrusion, measured

10   by the duration of the seizure and the intensity of the investigation, and by the subjective

11   intrusion measured by the fear and surprise engendered in law-abiding motorists by the

12   nature of the stop." *United States v. Fraire*, 575 F.3d 929, 934 (9th Cir. 2009) (citations

13   omitted).  "Such a stop is reasonable per se, so long as the scope of the detention remains

14   confined to a few brief questions, the possible production of a document indicating the

15   detainee's lawful presence in the United States, and a 'visual inspection of the vehicle . . .

16   limited to what can be seen without a search.'" *United States v. Taylor*, 934 F.2d 218, 220

17   (9th Cir. 1991) (quoting *Martinez-Fuerte*, 428 U.S. at 558, 562, 96 S.Ct. at 3083, 3085).

18        "[A] vehicle [may] be stopped at 'reasonably located checkpoints,' . . . for brief initial

19   questioning and referred to a secondary inspection area for further brief questioning 'in the

20   absence of any individualized suspicion . . . .'" *United States v. Barnett*, 935 F.2d 178 (9th

21   Cir. 1991) (quoting *Martinez-Fuerte*, 428 U.S. at 562, 96 S.Ct. at 3805).  Moreover, the

22   Ninth Circuit Court of Appeals has "held that *Martinez-Fuerte* 'does not mandate an inquiry

23   into the subjective purpose of the agent making referrals to secondary inspection, unless there

24   is some objective evidence supporting the charge of pretext." *United States v. Koshnevis*,

25   979 F.2d 691, 694 (9th Cir. 1992); *see also United States v. Wilson*, 7 F.3d 828, 833 (9th Cir.

26   1993) (same).  As such, "[i]n the absence of affirmative evidence that [an agent] harbored

27   a subjective purpose in referring [a defendant] to secondary inspection for drug-related

28   offenses, we will not require an agent to demonstrate articulable suspicion for an otherwise

1    legitimate immigration stop." *Id.*  If the brief further detention at an immigration checkpoint

2    is for reasons unrelated to immigration, the Government bears the burden to show that "the

3    brief further detention . . . [is] predicated on an articulable suspicion or 'a minimal showing

4    of suspicion,' . . . of criminal activity." *Taylor*, 934 F.2d at 221 (citations omitted); *see also*

5    *Wilson*, 7 F.3d at 834; *United States v. Bowers*, 967 F.2d 592 (9th Cir. 1992).

6          When making a reasonable-suspicion determination, the reviewing court "must look

7    at the 'totality of the circumstances' of each case to see whether the detaining officer has a

8    'particularized and objective basis' for suspecting legal wrongdoing."  *United States v.*

9    *Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citations omitted).

10   In so doing, officers are allowed "to draw on their own experience and specialized training

11   to make inferences from and deductions about the cumulative information available to them

12   that 'might well elude an untrained person.'" *Id.* at 273, 122 S.Ct. at 750-51. (citations

13   omitted).

14         Here, the Government and Defendant Peraza agree that the referral of the Ford

15   Explorer to secondary was proper.  Hr'g Tr. 64:18-65:10.  Based upon the totality of the

16   circumstances – the Lukeville POE report that the Ford Explorer had two passengers without

17   luggage, Defendants subsequent appearance at the State Route 85 check point with luggage

18   in their vehicle, Agent Chokan's knowledge that the area between the Lukeville POE and the

19   State Route 85 check point was an area where narcotics smugglers loaded vehicles, and

20   Agent Chokan's experience with duffel bags similar to those contained in the Ford Explorer

21   being used in narcotics smuggling operations, Agent Chokan had articulable, reasonable

22   suspicion to refer the Ford Explorer to secondary.  *See* Hr'g Tr. 10/6/2014 (Doc. 61) 28:6-

23   29:6, 29:20-30:14, 31:3-34:22, 37:7-38:3, 38:14-23, 43:2-44:9, 54:3-15, 55:9-13; *see also*

24   Def.'s Mot. to Suppress (Doc. 30) at 2; Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of

25   Probable Cause (Doc. 32) at 3.

26         Counsel for Defendant Gonzales questioned Agent Chokan extensively regarding his

27   personal knowledge regarding the Lukeville POE and narcotics smuggling activity in the

28   area; however, the this line of questioning misses the mark.  The collective knowledge

doctrine "allows courts to impute police officers' collective knowledge to the officer conducting a stop, search, or arrest." *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010). The Ninth Circuit Court of Appeals has "been willing to aggregate the facts known to each of the officers involved at least '[w]hen there has been communication among agents.'" *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (alterations in original) (citations omitted). In the instant case, Agent Chokan was contacted by agents at the Lukeville POE who observed the Ford Explorer entering the country, and told to watch for it. Hr'g Tr. 10/6/2014 (Doc. 61) 28:6-29:6, 30:15-25; *see also* Govt.'s Resp. to Def.'s Mot. to Suppress for Lack of Probable Cause (Doc. 32) at 3; Def.'s Mot. to Suppress (Doc. 30) at 2. Furthermore, aside from Agent Chokan's direct participation in cases involving narcotics smuggling in the area, he was also briefed on other agents experiences through meetings and reading other files. *See* Hr'g Tr. 10/6/2014 (Doc. 61) 40:15-42:25. The Court finds Agent Chokan's testimony credible, and that based on direct personal knowledge, and that gained through other agents, Agent Chokan developed reasonable suspicion to refer Defendants to secondary.

## 2. Probable Cause

"At fixed Border Patrol checkpoints within the nation's interior, the government can send a motorist for a brief secondary inspection upon a 'minimal showing of suspicion,' but then (as is the case with an ordinary traffic stop) it needs probable cause or consent in order to search the vehicle." *United States v. Thomas*, 726 F.3d 1086, 1095 (9th Cir. 2013); *see also United States v. Preciado-Robles*, 964 F.2d 882,884 (9th Cir. 1992) (citing *Martinez-Fuerte*, 428 U.S. at 567, 96 S.Ct. at 3087) ("Arrests or searches at immigration checkpoints must be justified by either probable cause or consent"). Probable cause is a "flexible, common-sense standard[.]" *Florida v. Harris*, – U.S. –, 133 S.Ct. 1050, 1053, 185 L.Ed.2d 61 (2013) (alterations in original) (citing *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "A police officer has probable cause to conduct a search when 'the facts available to [him] would 'warrant a [person] of reasonable caution in the belief'' that contraband or evidence of a crime is present." *Id.* at 1055 (quoting *Texas v. Brown*, 460 U.S.

730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)).   "The test for probable cause is not reducible to 'precise definition or quantification.'"   *Id.* (quoting *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)).   It does, however, require more than the reasonable suspicion standard.   *See Navarette v. California*, – U.S. –, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014).   "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision."   *Harris*, 133 S.Ct. at 1055 (quoting *Gates*, 462 U.S. at 235, 103 S.Ct. 2317) (alterations in original).

Here, although Agent Chokan had reasonable suspicion to refer the Ford Explorer to the secondary inspection area, there was no further information obtained prior to his search of Defendants' vehicle.   *See* Hr'g Tr. 10/6/2014 (Doc. 61) 58:23-25; *see also* Def.'s Mot. to Suppress (Doc. 30) at 3.   Agent Chokan did not ask for, nor received Defendants consent to search the vehicle.   *Id.*   Agent Chokan did not illicit any information from Defendants, or otherwise question them in order to assess their demeanor.   *See id.*   Agent Chokan did not request a K9 unit either prior to the search.   The Government did not demonstrate that Agent Chokan's reasonable suspicion, sufficient to refer Defendants' vehicle to secondary, rose to the level of probable cause.   As such, the Court finds that Agent Chokan did not possess probable cause to search Defendants' vehicle.

## III.   CONCLUSION

Based upon the totality of the circumstances, Agent Chokan possessed reasonable suspicion sufficient to support the referral of Defendants to the secondary inspection area. *See Taylor*, 934 F.2d at 221.   He did not, however, possess probable cause or obtain consent to search Defendants' vehicle.   *See Harris*, 133 S.Ct. at 1055; *Thomas*, 726 F.3d at 1095. Accordingly, the search of Defendants' vehicle violated the Fourth Amendment.

## IV.   RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District

1   Court GRANT Defendant Vanessa Marie Gonzales's Motion to Join Co-Defendant's

2   Motion to Suppress (Doc. 47) and GRANT Defendant Amelia Peraza's Motion to

3   Suppress for Lack of Probable Cause (Doc. 30).

4          Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal

5   Procedure, any party may serve and file written objections within fourteen (14) days after

6   being served with a copy of this Report and Recommendation.  No reply shall be filed

7   unless leave is granted from the District Court.  If objections are filed, the parties should

8   use the following case number: **CR-14-0290-TUC-JAS**.

9          Failure to file timely objections to any factual or legal determination of the

10  Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right

11  of review.

12         DATED this 7th day of November, 2014.

13

14  _____

15                         Bruce G. Macdonald
                      United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28